## JOHN RILEY v. LOUIS B. LITTLEFIELD.

*Replevin — Declaration — Damages — Depreciation in value — Entry fees of race-horses.*

1. Whether the property was unlawfully taken or is wrongfully detained, the declaration is in the same general form, and under it every question can be tried that is triable in the action of replevin; citing *Elliott v. Whitmore,* 5 Mich. 532.

2. In replevin for a race-horse seized by a sheriff on an attachment, the plaintiff may recover damages arising from his depreciation in value by reason of not being properly cared for.

3. In such a case the plaintiff cannot recover as damages entrance fees and fines demanded by the trotting association under its rules as a condition to the entry of the horse in *future* races, the same having been paid after the horse was attached, he having been entered in certain races in which he failed to start by reason of such attachment.

Error to Wayne. (Hosmer, J.) Argued October 14 and 15, 1890. Decided December 24, 1890.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*Sloman, Berry & Duffie (William F. Atkinson,* of counsel), for appellant.

*George W. Radford,* for plaintiff.

LONG, J. This is an action of replevin of a race-horse known as "Dr. West," and of which defendant, as sheriff of Wayne county, was in possession under certain writs of attachment issued out of the Wayne circuit court against the goods and property of one Clifton E. Mayne, of Omaha, Neb.

The plaintiff claimed to have obtained the horse of Mayne in May, 1888, in trade of a mare named "Delle

Murray," valued at $1,500; the mare's colt valued at $1,000; and a filley, valued at $1,000. After the trade, Mayne still owed the plaintiff something over $8,000, when, in June following, plaintiff claims that Mayne turned over to him two other horses, known as "Tommy Linn" and "Dan D." A bill of sale was given by Mayne to him in June of all three horses. This bill of sale was recorded in the office of the county clerk of Douglas county, Neb., on June 14, 1888, being the county in which Mayne and plaintiff both resided. This bill of sale is as follows:

"Clifton E. Mayne to John Riley.

"Know all men by these presents, that I, C. E. Mayne, of the county of Douglas, state of Nebraska, of the first part, for and in consideration of the sum of $10,000, lawful money of the United States to me in hand paid at or before the ensealing and delivering of these presents, by John Riley, of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey, unto said party of the second part, his executors, administrators, and assigns, the bay horse, 8 years old, known as 'Tommy Linn;' the dark bay horse, 10 years old, known as 'Dan D.;' and the dark bay horse, 8 years old, known as 'Dr. West,'—belonging to me, and now in the possession of James Newbro for racing purposes through the different trotting and pacing circuits. To have and to hold the same unto the said party of the second part, his executors, administrators, and assigns, forever; and I do, for myself, my heirs, executors, and administrators, covenant and agree to and with said party of the second part, his executors, administrators, and assigns, to warrant and defend the sale of said property, goods, and chattels hereby, and unto the said party of the second part, his executors, administrators, and assigns, against all and every person or persons whomsoever.

"In witness whereof I have hereunto set my hand and seal this 12th day of June, A. D. 1888.

"CLIFTON E. MAYNE."

Under this bill of sale plaintiff claims to have taken possession of the horses at East Saginaw, this State, in

July, 1888, a week before they were taken under the writs of attachment in Detroit, and that he was in possession at the time the attachments were served, and so notified the sheriff.

The declaration is in the ordinary form in replevin, claiming damages $10,000. The horse, during the time he was detain by the sheriff,—a month lacking two days,—was kept in the livery barn of one Watson, in Detroit, and plaintiff claims that he did not receive proper care and attention, by reason of which he depreciated in value. It was also claimed by the plaintiff that the horse was entered before the attachment for the races at Cleveland, Buffalo, and Chicago, which occurred during the months of July and August; that he paid $200 entrance fees at Chicago after the attachment, and before the races, and was obliged to pay $100 entrance fees at Buffalo after he obtained possession of the horse, and before he could be permitted to take part in other races, and was fined $10 at Buffalo, as, under the rules of the association, if a horse was entered in the race, and did not take part, he is fined, and the owner and horse are suspended from taking part in any race until all moneys and fines are paid, all of which moneys plaintiff claims to have lost by reason of his horse having been held under the attachments. The horse was taken into the plaintiff's possession under the writ of replevin, and on the trial the plaintiff had verdict and judgment finding the title in him, and also damages for detention to the sum of $1,310. Defendant brings error.

The defendant's contention on the trial was that the sale of the horse to the plaintiff was a mere sham, and the bill of sale a pretext to aid Mayne, so that, if in his rounds over the trotting circuits Mayne's horses were levied upon, the plaintiff could come forward with the pretended bill of sale and claim them.

A great many errors are assigned, and the brief of counsel for the appellant contains many pages dwelling upon questions of fact which were properly submitted to and passed upon by the jury, and which it is not our province to consider. The whole case was submitted to the jury upon the theories of the respective parties, and we think it a fair submission as to the title and ownership of the horse in controversy. The charge put the burden of proof upon the plaintiff to establish his title, and the jury were instructed that, if the horse was transferred to the plaintiff in good faith, he was entitled to recover.

The main question under the charge as presented by this record arises upon the question of damages which the plaintiff was permitted to and did recover in the case. These elements of damages have been set out as claimed by the plaintiff. The court directed the jury that if the plaintiff paid this $310, and was debarred from getting into the races by reason of the attachment, he would be entitled to recover this amount; and also, if the horse depreciated in value in the hands of the sheriff by reason of not being properly cared for, he would be entitled to recover the damages arising therefrom. Upon this last proposition there can be no question. There was some evidence to go to the jury, and we think the question fairly submitted under the charge of the court.

It is contended, however, by the defendant that the court was in error in instructing the jury that the $310 was a proper element of damages which might be awarded the plaintiff under the facts stated.[1] It is claimed, first, that this element of damages could not be recovered under the ordinary form of declaration in replevin. If these damages were recoverable at all, the declaration is proper

[1] Counsel for defendant cited *Mizner v. Frazier*, 40 Mich. 592; *Talcott v. Crippen*, 52 Id. 633; *Aber v. Bratton*, 60 Id. 357; *Bateman v. Blake*, 81 Id. 227.

in form to allow the recovery under the provisions of the statute. How. Stat. §§ 8337, 8341. Both these provisions of the statute were construed by this Court in *Phenix v. Clark*, 2 Mich. 329, and *Elliott v. Whitmore*, 5 Id. 537. In this last case it was said:

" Whether the goods be unlawfully taken or wrongfully detained, the declaration is in the same form, and under it every question can be tried that is triable in the action of replevin."

Plaintiff's counsel claims that the recovery was not for the fine imposed in not letting the horse take part in the races, but that, under the charge, the court confined the damages to the amount of depreciation in the value of the horse by reason of not being properly cared for, and the entrance fees which the plaintiff lost by reason of the detention of the horse by the sheriff under the writs. This part of the charge is as follows:

" If you come to the conclusion that Riley was entitled to the possession of the horse, that the sale was made in good faith to him, as he has told you, why then he will be entitled, gentlemen of the jury, to such damages as he has suffered by reason of the detention of the horse here in the possession of the sheriff. What those damages amount to is for you to say, if you find that he was damnified. You have heard the testimony as to the care of the horse, as to the horse being out of condition; you have heard all the testimony upon that point. It is for you to say, gentlemen of the jury, from that testimony, what Mr. Riley suffered, if he suffered anything. There has been evidence which had a tendency to show that the horse was somewhat out of training; that he had increased in weight; and that in consequence of that, as well as in consequence of his detention in Detroit, he was barred from entering certain other races during the racing season of last year. Now, what did he suffer by reason of those damages? Obviously, if he was prevented from entering those races, from starting in those races where he had already entered, or where he had paid the money, or was obligated to pay the money,—and I think that the testimony in this case

shows, has a tendency to show, that he afterwards paid some $310 for *entrance* in which he was not able to start by reason of his detention in Detroit,—why, I say, gentlemen of the jury, obviously, if he was debarred, he would be entitled to recover those *entrance fees,* which I think amounted to, as I said before, $310. I may be mistaken in the sum, gentlemen of the jury. If I err in stating that to you as the sum, you, in your judgment, will correct me, remembering what the testimony shows upon that point. And also, if you find that Mr. Riley is entitled to recover in this case, give him such damages as he has suffered, any further damages that he has suffered, by reason of the detention of the horse. If the horse was depreciated in value by reason of the detention in the hands of the sheriff, why then you shall ascertain what amount he was depreciated in value, and assess the damages accordingly."

Under the testimony in the case, and the claim made upon the trial by counsel for the plaintiff, the charge does not bear the construction for which he contends. The plaintiff was called as a witness in his own behalf on the trial, and the following appeared from his testimony and the offers of his counsel while he was on the witness stand: From the plaintiff's testimony it appears that the horse was entered for races at Cleveland, Buffalo, Chicago, and Detroit during the months of July and August. Those races occurred between the time of the attachment and when plaintiff got possession of the horse under the writ of replevin, so that the horse was kept out of these races. He had paid the entrance fees at some of these places. He paid $200 in Chicago after the horse was attached, and before the races, and $110 before he could start the horse at Omaha. This $310 was paid in races in which he was entered, but did not compete. Mr. Radford, plaintiff's counsel, in explanation of this, stated to the court as follows:

"He was obliged to pay $310 under the rules of the association, because he had been entered at those places and did not appear, before he could proceed any further."

This was not money paid before the horse was attached, but after the attachment, and before the possession of the horse was regained under the writ; that is, the plaintiff having entered the horse, and not paying the entrance money at the time of entry, and failing to start the horse in the race, the moneys were demanded and payment compelled before he could enter or start him in other races. The plaintiff explained the matter in this way:

"That when you enter your horse, in the association for trotting purposes, if you do not propose to take part in them, and to pay the entrance, you are fined if you do not pay the entrance, and that horse and the party entering him and the owner of the horse are all suspended from taking part in any races on the association tracks until all the money is paid up, with fines, which is ten per cent. of the entrance money."

It appears that the $10 paid was for such fines for failing to start at the Buffalo races. One hundred dollars entrance fees were there paid after the attachment, and $200 paid in entrance fees at Chicago after the attachment. These moneys were all paid, not for the entrance for the purpose of trotting the horse in those particlar races, but in order to be permitted to enter and take part in other races in the future. This was in the nature of a penalty imposed under the rules of the association. It does not matter whether or not these penalties could lawfully have been imposed as a condition precedent to his entering the horse in future races, so far as the rights of the plaintiff and the trotting association are concerned; they are not such damages as the plaintiff would have a right to sue and recover for by reason of the unlawful detention of the horse. If this could be taken as a part of the plaintiff's damages against the officer, then whatever terms the association might impose as a condition precedent to entry in other races might be recovered for. Such damages are too remote, even if they could be recovered at all

under the provisions of How. Stat. § 9387. Let us suppose the horse entered at Buffalo, Detroit, and Omaha for the July and August races, the entrance fees being $100 in each place. The horse is unlawfully detained by the officer under a writ of attachment beyond the time when the races are to come off. The plaintiff desires to enter him in a future race at Chicago, but, in order to do this, he is compelled to pay the entrance fees at Buffalo, Detroit, and Omaha, though the horse did not start in those races. The association may have the right, under its rules, to impose these terms as a condition precedent to letting the horse in at the Chicago races. In an action against the officer for the unlawful detention, it could not be said that this would fix, or in any degree tend to fix and determine, the damages which the officer must pay, for, if the association could fix and determine it by the amount of the original entrance fee, it could as well fix any other standard, and make the amount $1,000 or $10,000, and, being so fixed, it would measure the liability of the officer for such detention. The court was in error in permitting the recovery of these damages under the circumstances here stated.

Some errors are assigned upon the rulings of the court in the admission and rejection of evidence. We have examined those questions, and do not deem it important to discuss them. The trial seems to have been a fair one upon the main issue, and the evidence objected to admissible under the claimed facts.

For the error pointed out, the judgment must be reversed, with costs.[1]

---

[1] At the January term, 1891, plaintiff moved that the judgment of reversal be set aside, and the judgment below reduced to $1,000, with interest, and affirmed, which motion was denied, the record not showing upon what theory the jury proceeded in awarding damages.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred with LONG, J.

CAHILL, J. I concur in the result. I do not think such damages as were sought to be recovered in this case can be recovered under the general declaration in replevin.